**STEVEN GERALD REED**
406 Maple Street
Madisonville, Tennessee 37354

      **Plaintiff**

**vs.**
                                          **Docket No. _____**
                                          **JURY TRIAL DEMAND**

**MONROE COUNTY, TENNESSEE**
% Tim Yates, County Mayor
105 College Street, Suite 1
Madisonville, Tennessee 37354

**BILL BIVENS, Individually**
and in his official capacity as Sheriff
of Monroe County, Tennessee
Monroe County Sheriff Department
319 Hickory Street
Madisonville, Tennessee 37354

**JOHNNY EDWARD BATES, M.D., Individually**
and in his official capacity as healthcare provider
at the Monroe County Jail
Quality Correctional Health Care, Inc. (QCHC, Inc.)
Bron Bates, Suite A
200 Narrows Parkway
Birmingham, Alabama 35242-8624

**QUALITY CORRECTIONAL HEALTH CARE, INC. (QCHC, Inc.)**
with its principal place of business being
Bron Bates, Suite A
200 Narrows Parkway

Birmingham, Alabama  35242-8624
and Agent for Service of Process being
Incorp Services, Inc.
Suite 317
216 Centerview Drive
Brentwood, Tennessee  37027-3226

**JERRY NOLAN GURLEY, M.D.**
Talladega OB/GYN Assoc., PC
724 Stone Avenue
Talladega, Alabama  35160

**TOM PETREIT, LPN, CCHP**
Monroe County Jail
319 Hickory Street
Madisonville, Tennessee  37354

**CAPTAIN JAMES WAKEFIELD, Jail Administrator**
Monroe County Jail
319 Hickory Street
Madisonville, Tennessee  37354

**PAT WILSON, Chief Jailer**
Monroe County Jail
319 Hickory Street
Madisonville, Tennessee  37354

**RYAN BURNETT, Correction Officer**
Monroe County Jail
319 Hickory Street
Madisonville, Tennessee  37354

**MATTHEW WIGGINS, Correction Officer**
Monroe County Jail
319 Hickory Street
Madisonville, Tennessee  37354

**JIMMY STINNETT, Correction Officer**
Monroe County Jail
319 Hickory Street

Madisonville, Tennessee 37354

**HAROLD GUDGER, Correction Officer**
**Monroe County Jail**
**319 Hickory Street**
**Madisonville, Tennessee 37354**

     **Defendants**

# C O M P L A I N T

## Introduction

1.    Steven Gerald Reed brings this action for serious injury (blindness in both eyes) pursuant to 42 **U.S.C.** § 1983 and § 1988 and the Eighth and Fourteenth Amendments to the United States Constitution against the Defendants in their individual and official capacities. Jurisdiction over the statutory and constitutional claims are based upon 28 **U.S.C.** § 1331 and 1343.

2.    The Defendants failed to provide Steven Reed with necessary medical treatment for his obvious and serious medical condition and/or provided grossly inadequate medical care, thus violating Steven Reed's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

3. The constitutional violations were committed against Steven Reed, as a result of policies, customs, and/or practices of the Defendants acting in their official capacities.

4. The constitutional violations committed by the Defendants against Steven Reed were the legal cause of his total blindness in both eyes.

## Parties

5. Steven Gerald Reed is a resident of Monroe County, Tennessee. His current address is 406 Maple Street, Madisonville, Tennessee 37354.

6. The Defendant, Monroe County Tennessee, is a county and governmental entity of the State of Tennessee and service of process may be had upon County Mayor Tim Yates, 105 College Street, Suite 1, Madisonville, Tennessee 37354. Monroe County is responsible for providing professional and responsive health care for the good health and well being of the inmates of the Monroe County Jail. Monroe County is sued in its official capacity.

7. The Defendant, Bill Bivens, is and was at all times material, the Sheriff of Monroe County, Tennessee. As Sheriff, Bivens is and was responsible for the administration of the Monroe County Jail to provide professional and responsive health care for the good health and well being of the inmates of the jail and for the hiring, supervision, training, discipline and control of all

persons working for or in the jail. Sheriff Bivens may be served at the Monroe County Sheriff's Office, 319 Hickory Street, Madisonville, Tennessee 37354.

8. The Defendants, Pat Wilson who is the Chief Jailer and James Wakefield who is the Jail Administrator, are both responsible for the administration of the Monroe County Jail to provide professional and responsive health care for the good health and well being of the inmates of the jail and for the hiring, supervision, training, discipline and control of all persons for or in the jail. Wilson and Wakefield may be served at the Monroe County Jail at 319 Hickory Street, Madisonville, Tennessee 37354.

9. The Defendant, Johnny Edward Bates, M.D., is the founder and CEO of Quality Correctional Health Care. Defendant Bates entered into a contract with Monroe County, Tennessee to provide health care services for all persons committed to the custody of the Monroe County Jail. Defendant Bates saw and treated Steven Reed and had actual knowledge of a serious medical need and did not respond reasonably to the risk. In addition, Defendant Bates agreed to be available to identify those persons who had a serious medical need by treating it or referring to the required provider. Johnny Edward Bates, M.D. may be served at Quality Correctional Health

Care, Inc., Bron Bates, Suite A, 200 Narrows Parkway, Birmingham, Alabama 35242-8624.

10. The Defendant, Jerry N. Gurley, M.D., is the corporate medical director of Quality Correctional Health Care. Defendant Gurley treated Steven Reed and had actual knowledge of a serious need and did not respond reasonably to the risk to either treat the serious medical need or refer to the required medical provider. Jerry Nolan Gurley, M.D. may be served at Talladega OB/GYN Assoc, PC, 724 Stone Avenue, Talladega, Alabama 35160.

11. The Defendant, Tom Petreit, is the corporate LPN for QCHC and saw and treated Steven Reed. Defendant Petreit treated Steven Reed and had actual knowledge of a serious need and did not respond reasonably to the risk to either treat the serious medical need or refer to the required medical provider. Tom Petreit may be served at Monroe County Jail, 319 Hickory Street, Madisonville, Tennessee 37354.

12. The Defendant, Quality Commercial Health Care, is and was at all times relevant to this case the contractual medical provider for the Monroe County Jail. As medical provider QCHC was responsible to provide professional and responsive health care services for the good health and well being of the inmates of the Monroe County Jail. Quality Commercial Health Care, Inc. is a corporation doing business in the State of Tennessee with its principal

6

place of business being Bron Bates, Suite A, 200 Narrows Parkway, Birmingham, Alabama 35242-8624 and its agent for service of process being Incorp Services, Inc., Suite 317, 216 Centerview Drive, Brentwood, Tennessee 37027-3226.

13. The Defendants, Ryan Burnett, Matthew Wiggins, Jimmy Stinnett and Harold Gudger, were corrections officers at Monroe County Jail. As correction officers these Defendants were responsible for the care, custody, good health and well being of the inmates of the Monroe County Jail. Ryan Burnett, Matthew Wiggins, Jimmy Stinnett and Harold Gudger may be served at Monroe County Jail, 319 Hickory Street, Madisonville, Tennessee 37354.

**Facts**

14. Mr. Reed was an inmate in the Monroe County Jail in February 2012. He had been an inmate since November 2011. On February 16th Mr. Reed filled out a sick call slip (medical request form) because of bad headaches making him sick and he could not sleep.

15. Two days later, on February 18th Mr. Reed is seen by a QCHC nurse (unidentified) who completed a nursing protocol headache form. Mr. Reed stated he had this headache for 5-6 days. There was no history of trauma,

and the pain was located at the top of his head and base of his neck. The pain was described as a pressure/burning type pain. He reported no history of migraines. Mr. Reed's vital signs were normal. He gave no history of dizziness, nausea, visual changes or vomiting. He was given Ibuprofen 200 mg 2 tablets twice daily for three days.

16.  On February 19, 2012 at 0835 Correction Officer Jimmy Stinnett found Mr. Reed at the door of the cell holding his head and shaking badly. A nurse completed the headache nursing protocol. Mr. Reed described the location of his pain as being at the back of his head. By this time Mr. Reed had dizziness, nausea and visual changes. He was sensitive to light. The telephone orders from the doctor were daily weights and vital signs, Phenergan 25 mg. orally now, and Atenolol 25 mg. orally in the morning. He was to see the doctor this week during rounds. From this time forward Mr. Reed had continuing visual disturbances including double vision.

17.  A QCHC physician saw Mr. Reed on February 19, 2012. Mr. Reed's complaint was of headache. He told the doctor he has frequent headaches especially while he is in jail. He stated he did not have headaches when he gets out of jail. His blood pressure was 128/82 and his respiration was 48. The doctor reported his pupils were normal and he had no swelling of the optic nerves. No mention was made of the visual disturbances noted by the

QCHC nurse earlier that day, or the dizziness. Mr. Reed had double vision and other visual complaints at that time.

18. After Mr. Reed saw the doctor, at 8:00 p.m. Correction Officer Matthew Wiggins saw Mr. Reed at the door of his cell complaining of back, neck and arm pain. He had cold sweats. The corrections officer called the nurse and the nurse told the corrections officer to take his blood sugar which was 138. The same QCHC nurse who saw him earlier that day came and took his BP at 9:00 p.m. The nursing protocol for headache completed at 2115 (9:15 p.m.) stated Mr. Reed had pain in the back of the head which was a throbbing, constant ache. Mr. Reed still had dizziness, nausea, visual changes and sensitivity to light. He appeared to be in acute distress. He gave the nurse no history of migraines or sinus problems. He still had double vision and other visual problems. No additional orders or treatment was given to Mr. Reed.

19. On February 20, 2012 at 1520 (3:20 p.m.) Mr. Reed was brought back to medical with complaints of tingling all over, weakness and headache, by Correction Officer Harold Gudger. The QCHC nurse placed Mr. Reed on the exam table to relax. His vital signs were taken. Mr. Reed's temperature was 95.9, his pulse was 55 and respirations 24. He stopped shaking his arm and moaning. His evening medications were provided and he was taken

back to the cell. He continued to have visual disturbances including double vision. He was taken back to a jail cell without any treatment.

20. On February 22nd at 1920 Mr. Reed fell and hit his head. Mr. Reed was lying on the floor and he couldn't move his legs. Mr. Reed was observed by Correction Officer Wiggins. Mr. Reed was seen in a holding cell by Nurse Petreit. Mr. Reed had a fall secondary to headache and dizziness. The nurse finds Mr. Reed sitting in a wheelchair. The nurse stated that Mr. Reed's vital signs were stable. He stated he hit the back of his head. Mr. Reed was kept in the holding cell for observation. No mention was made of Mr. Reed's visual disturbances. He had increased visual symptoms at this time. He was given Motrin and returned to a holding cell.

21. On February 24th around 9:00 a.m. Mr. Reed was found lying on the ground arching his back and his eyes were rolling back. It appeared as though he was having a seizure. This seizure was seen by Correction Officer Ryan Burnett. Mr. Reed was taken to medical and again saw QCHC Nurse Petreit. He had headaches, dizziness and nausea. The nurse describes he was pale in color, skin turgor. He complained of severe headache, all over his head. His hand grips were weak, although he appears not to give effort. Mr. Reed was placed in an observation cell, and had to lay on a mat. Again,

no mention was made of visual disturbances. Mr. Reed continued to have visual disturbances which were not recorded.

22. Mr. Reed was reexamined around 2:30 p.m. He continued to complain of headache and dizziness. He had a seizure for approximately one minute without a postictal state. This was observed by Nurse Petreit. At 1800 hours (6:00 p.m.) Dr. Johnny Bates was notified and an off-site consultation request was made for a CT scan of the head. Mr. Reed had continued complaints of double vision, and this was not recorded.

23. Mr. Reed was seen at Sweetwater Hospital emergency room at 18:57 on February 24, 2012. Mr. Reed presented with a complaint of headache, dizziness, onset about 12-13 days ago. Mr. Reed stated <u>he had double vision for 10 days</u> with fatigue and vomiting. He had been an inmate at the jail for 4 months. His neurological assessment was: He was awake, alert, confused. He reported dizziness for 10-12 days. He had pain in occipital area which was 8 out of 10. A CT of head was performed which showed non specific sub-centimeter hypodensities in the periventricular and subcortical white matter. The recommendation was to follow up imaging with contrast enhanced MRI. This treatment was not authorized by Monroe County.

24. At Sweetwater Hospital emergency room Mr. Reed was given Toradol 60 mg., Phenergan 25 mg., and Amoxicillin 500 mg. The impression of the

emergency room doctor was sinusitis, headache: etiology unclear. Mr. Reed returned to jail 2/24/12 at 2027 (8:27 p.m.).

25. No record exists of Mr. Reed receiving any treatment when he returned to the jail on February 24, 2012. No record exists as to Mr. Reed's condition on February 25, 2012 either from an inmate incident report or nurse's notes until 1500 (3:00 p.m.) when a nurses note states Dr. Jerry Gurley was notified Mr. Reed had chest pains and aches and pains. Orders were given for Claritin. In fact that day February 25, 2012 Mr. Reed's condition had continued to deteriorate. He continued to have a severe headache, vision difficulties and confusion. He had increasing loss of vision in both eyes. These very alarming conditions: loss of vision, seizures, weakness, and a severe unexplained headache were never addressed or even recorded in his records on February 25, 2012, although all the Defendants had actual knowledge of these alarming and serious symptoms.

26. On February 26, 2012, despite Mr. Reed's increasing loss of vision and his alarming signs of serious medical need, no record exists of any correction officer or medical officer at the jail acknowledging Mr. Reed's serious and alarming signs of continued vision loss. On February 26, 2012 no record exists of any note of Mr. Reed's serious and deteriorating condition. At 1757 (5:57 p.m.) it is noted he is moved from C hold to B hold for medical

12

lockdown. At 17:54 a QCHC nurse notes she called Dr. Jerry Gurley. The nurse's notes do not state what Mr. Reed's condition is at that time. The notes do not report any vision difficulties. The QCHC nurse states Dr. Gurley's orders are to send Mr. Reed to Sweetwater Hospital for evaluation and treatment for dizziness and lack of balance. Mr. Reed at that time had severe vision disturbances, confusion, and weakness.

27. Mr. Reed arrives at SWHA two hours after being seen by the QCHC nurse. Mr. Reed told the admitting nurse he had loss of vision and hearing over the last ten (10) days. He had no vision in either eye. His pupils were dilated bilaterally; they were not reactive, they were fixed and dilated and were equal.

28. Mr. Reed was transferred to Parkwest Medical Center where he told the admitting doctor he had declined in vision in both eyes for the past ten (10) days. He was seen by a neurologist who noted that Mr. Reed had symptoms over the past 1-2 weeks of increased intracranial pressure. By that time he was only able to perceive light and dark with both eyes and was unable to count fingers. A lumbar puncture was immediately ordered. Mr. Reed was diagnosed with meningitis which had caused his blindness.

29. Mr. Reed has a fungal infection called cryptococcal meningitis. It is most likely that he contracted this infection while he was in the jail for 4-5

months. Cryptococcal meningitis is often seen in patients who have compromised immune systems, such as HIV patients; however, Mr. Reed has an intact immune system (he is immunocompetent) and does not have HIV disease.

30. By the time Mr. Reed was correctly diagnosed with meningitis, and the pressure relieved from his spine and treatment instituted, the pressure in his brain had caused permanent blindness in both eyes and other neurological injury. To treat the fungal infection anti-fungal drugs were given to Mr. Reed. He continues to take those drugs and is permanently blind in both eyes, and has other neurological injury.

31. Mr. Reed had told, and the Defendants all knew, that for ten days he had headache, loss of vision, neurological weakness, unsteady gait and seizures, for which he received no treatment. In the presence of a headache, when these red-flag neurological signs start, a medical emergency exists.

### Failure to Provide Constitutionally Adequate Medical Care

32. The Defendants, Monroe County, Tennessee, Bill Bivens, Johnny Edward Bates, M.D., Quality Correctional Health Care, Inc., Jerry Nolan Gurley, M.D., Tom Petreit, LPN, CCHP, Captain James Wakefield, Pat Wilson, Ryan Burnett, Matthew Wiggins, Jimmy Stinnett and Harold Gudger, acted

with deliberate indifference to the serious medical needs of Steven Gerald Reed which resulted in total blindness in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Specifically, all these Defendants failed to act upon, and in some cases even take note of, Mr. Reed's serious medical need—that is, his increasing loss of vision and deteriorating neurological condition. The QCHC nurses including Mr. Tom Petreit saw and examined Mr. Reed, had actual knowledge of a serious medical need and consciously ignored that need. The corrections officers— Wakefield, Wilson, Burnett, Wiggins, Stinnett and Gudger—failed to respond to a serious medical need, even though they too had actual knowledge of his serious medical need. Mr. Reed was going blind in both eyes and the nurses and corrections officers did not respond reasonably to the risk. Mr. Reed, while an inmate in the Monroe County Jail, had a serious problem—loss of vision and deteriorating neurological condition—and the Defendants disregarded this serious problem. Despite repeated visits to sick call, despite numerous complaints of impending blindness and neurological symptoms, the Defendants failed to address this life-threatening condition. Bill Bivens, as Sheriff of Monroe County, and Monroe County had actual knowledge that the medical care system, including his correctional officers, was deficient because of lack of training of correctional officers, and failure

to assure that only qualified doctors and nurses provide health care to the inmates of Monroe County. Drs. Bates and Gurley either examined Mr. Reed or were told of his serious medical need and developing blindness; yet neither ever noted in any of their orders any acknowledgement of this serious problem, or gave any orders addressing this alarming and serious symptom which indicated serious neurological compromise.

33. These Defendants owed a duty to Steven Gerald Reed to provide him with appropriate, responsive and reasonable health care, including, but not limited to the following:

    a.    Proper monitoring of Mr. Reed's health and physical condition;

    b.    Detecting signs and symptoms of Mr. Reed's serious health condition and providing timely intervention of the same;

    c.    Access to a physician, hospital or other properly trained health care provider with experience in diagnosing, evaluating and treating serious medical conditions; and

    d.    Care in accordance with established policies, procedures and protocol to ensure the good health and well being of Mr. Reed.

34. Despite the Defendants' knowledge of Steven Gerald Reed's serious health condition, they acted with deliberate indifference and failed and refused to

take adequate, responsive and reasonable steps to provide for his good health and well being as follows:

a.    Failing to take heed of the seriousness of Mr. Reed's medical condition;

b.    Providing only cursory medical attention to Mr. Reed when his need for treatment was obvious;

c.    Failing to have Mr. Reed evaluated in a timely manner at the jail by a qualified medical professional;

d.    Failing to contact a qualified medical professional upon the worsening of Mr. Reed's condition;

e.    Providing medical treatment without adequate training or experience;

f.    Failing to inform supervisors of Mr. Reed's worsening medical condition; and

g.    Failing to follow established policies, procedures and protocol in the care of Mr. Reed.

35.    The acts and omissions of these Defendants were committed under color of law and under color of their official authority as employees and/or agents of the Monroe County Jail.

## Failure to Provide Constitutionally Adequate Medical Care—Supervisory Liability

36.    The Defendants, Monroe County, Tennessee, Bill Bivens, Johnny Edward Bates, M.D., Quality Correctional Heal Care, Inc., Jerry Nolan Gurley, M.D., Tom Petreit, LPN, CCHP, Captain James Wakefield, Pat Wilson, Ryan Burnett, Matthew Wiggins, Jimmy Stinnett and Harold Gudger, acted with deliberate indifference to the serious medical needs of Steven Gerald Reed which resulted in blindness in both eyes in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

37.    These Defendants owed a duty to Steven Gerald Reed to provide adequate, professional and responsive health care services for his good health and well being.  These duties included but were not limited to, the following:

   a.    Adequately fund and provide for medical services for inmates of the Monroe County Jail;

   b.    To adopt proper policies, rules and procedures for the providing of medical services for inmates at the Monroe County Jail;

   c.    Ensuring compliance by all employees, agents and contract workers with the policies, rules and procedures for the providing of medial services for inmates of the Monroe County Jail; and

d.      To implement and monitor an adequate hiring and training program for all Corrections Officers, other employees and agents working in the Monroe County Jail.

38.   The Defendants acted of failed to act in accordance with their constitutional duties to Steven Gerald Reed as follows:

a.      Failed to adequately fund or provide professional, responsive medical services at the Monroe County Jail;

b.      Failed to follow their own policies, rules and procedures for the furnishing of medical services at the Monroe County Jail;

c.      Failed to adequately train jail personnel and historically have had a policy, custom and practice of failing to implement an adequate training program for jail personnel;

d.      Adopted, ratified and/or implemented policies, customs, practices and procedures which resulted in Mr. Reed being denied professional and responsible health care; and

e.      Adopted, ratified and/or implemented policies, customs, practices and/or procedures which denied Mr. Reed medical treatment within a responsive and reasonable time.

39.   The acts and omissions of these Defendants taken pursuant to the defacto policies, customs, practices and procedures as adopted, ratified and/or

implemented by these Defendants, impermissibly condoned and allowed for the denial of proper medical care and treatment for the inmates of the Monroe County Jail, such as Steven Gerald Reed, which amounted to deliberate indifference of his civil rights guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. The policies, customs, practices and procedures adopted allowed unqualified personnel to render care to inmates or Monroe County Jail.

40. As a result of the actions of the Defendants, Mr. Reed is totally blind in both eyes. He will require care for the remainder of his life. He will need assistance with all of his activities of daily living. He can not live on his own and will require custodial care. He is incontinent and requires catheters. Mr. Reed's injuries are a direct result of the deliberate indifference of the Defendants, and policies of Monroe County Sheriff, Bill Bivens, and the actions and policies of QCHC.

41. Plaintiff asks for the following relief:

   a. For a jury trial;

   b. For compensatory damages for the loss of sight in both eyes.

   c. For total compensatory damages of at least $3,000,000.00.

   d. For punitive damages;

e.     For reasonable attorney fees and expenses pursuant to 42 **U.S.C.** §

     1988; and

f.     For costs.


THIS the 15th day of February, 2013.


     s/ W. Holt Smith
     W. HOLT SMITH, BPR # 004557
     Attorney for Plaintiffs
     209 Tellico Street North
     Madisonville, Tennessee 37354
     Phone: (423) 442-4012


     s/ W. Tyler Weiss
     W. TYLER WEISS, BPR # 028801
     Attorney for Plaintiffs
     WORTHINGTON & WEISS
     409 N. College Street, Suite 1
     Madisonville, Tennessee  37354
     Phone: (423) 442-5353